IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMACY CORPORATION OF AMERICA/ASKARI CONSOLIDATED LITIGATION | Civil Action No. 16-1123-RGA<br><br>CONSOLIDATED |

MEMORANDUM ORDER

One of the motions *in limine* (D.I. 184-18) raised a dispute about what the scope of the trial was as related to the six-count second amended and supplemental complaint filed on February 19, 2019 (D.I. 110). The complaint is thirty pages long but a lot of it is at best pretty irrelevant background. (*E.g.*, *id*. at 4-6 (history of OncoMed from 2002 to 2012)). The actual counts of the complaint are broad in the sense that they incorporate by reference every preceding allegation and narrow in the sense that they identify the theory being asserted with some specificity.

There are essentially three relevant time periods. First, late 2013, when the Operating Agreement and other agreements were signed and closed. After that, PCA owned 37.5% of the membership interests, Plaintiffs ("Askari") owned 49%, and Zweigenhaft (who has filed a separate case, and whose claims will not be resolved in this case) owned 13.5%. Second, December 7, 2016, when the First Call was exercised. And, third, December 2018 to February 2019, when the Second Call was exercised, disputed, and closed.

Counts I and II, styled as a declaratory judgment and a breach of contract claim, relate to the First Call, during which PCA purchased 30.5/49 of Askari's membership interests. The

complaint's remaining[1] claims are that PCA breached the Operating Agreement in exercising the First Call because: (1) the purchase price was incorrectly calculated because of a "Net Debt" input that exceeded the $16,500,000 limit (effectively) set by the Operating Agreement; and (2) the purchase price was incorrectly calculated because EBITDA did not include "revenues derived from shared services." As a basis for the first theory, the allegations are that "Net Debt" could not be greater than $16,500,000 because the Operating Agreement (in conjunction with the Loan Agreement) prohibited such a "Major Decision" without consent of 75% of the membership interests, and there was no such consent.[2]

It appears that PCA raises three defenses to the allegations of Counts I and II. One, the increases in Net Debt were not Major Decisions. Two, in the but-for world where the increases were Major Decisions, there would be no damages because the net effect of the Working Capital loans was to increase what was owed to Askari under the payout formula. [I think there may be a dispute about whether the but-for world analysis is appropriate, as Askari appears to intend to argue that even if the increase in Working Capital was a good business decision, the formula was capped at $16.5 million. (D.I. 184 at ¶81).]. Three, revenues derived from shared services were properly calculated.

Counts III and IV, also styled as a declaratory judgment and a breach of contract claim, relate to the Second Call. Askari alleges that the Operating Agreement was breached because: (1) the First Call breach means that PCA had to purchase 62.5% [which I assume to be 49/62.5 Askari and 13.5/62.5 Zweigenhaft] of the membership interests at the Second Call; or, in the

---

[1] The complaint had a third claim related to the First Call, that PCA was only purchasing 28.5/49 of Askari's interests, not the 30.5/49 PCA claimed it was purchasing. In the pretrial order (D.I. 184-18 at 1 n.3), and as confirmed during the pretrial conference (D.I. 187 at 6), Plaintiffs have abandoned the 28.5 versus 30.5 claim.

[2] It is undisputed that there was no consent. (D.I. 184, ¶ 28).

alternative, (2) Askari owned 18.5% of the membership interests (for which Askari was paid about $18.8 million), and, in either event, the purchase price was incorrectly calculated because EBITDA did not include "revenues derived from shared services." And, although the complaint does not mention the Net Debt issue of the First Call, it appears that the parties do understand that to be at issue in the Second Call also. (D.I. 184 at ¶¶ 132, 192).

Count V involves breach of contract claims against three individual Defendants, and I will deal with that separately in connection with a pending motion for summary judgment.

Count VI involves a claim of breach of covenant of good faith and fair dealing based on the increase of the Working Capital Loan. The Working Capital Loan is tied in with the Net Debt issue described above. It does not significantly expand what is at issue in the case.

There is also a breach of a restrictive covenant that is asserted by PCA against Askari (which was described at the pretrial conference as being a narrow and focused issue involving at most $600,000 (D.I. 187 at 22, 24), which is not at issue in connection with the motion *in limine* or this order.

Based on the allegations of the complaint, and review of the pretrial order, I understand there to be two contract issues in connection with the complaint. First, were the increases in the Working Capital loans "Major Decisions" within the meaning of the Operating Agreement? If not, there was no breach in that regard. If they were, then they were actions taken in breach of the Operating Agreement. There might then be a difficult damages question of what the consequences of that breach were. Second, were "revenues derived from shared services" incorrectly calculated? If not, there was no breach in that regard. If they were, there was a breach of contract. Presumably, the damages question is a simple matter of calculating the formula with the correct input for revenues derived from shared services.

In review of the Pretrial Order, Plaintiffs include as factual issues to be litigated various allegations relating to adjustments to EBITDA based on events in 2013 and 2014, inclusion of non-operating expenses, other EBITDA errors, issues about an Intercompany Receivable, issues about related-party transactions, Board of Managers' meetings without notice, and an abandoned Business Plan. (D.I. 184 at ¶¶ 59-64, 73-78). As far as I can tell, none of these asserted factual issues are relevant to the actual disputed factual and legal issues as framed by the complaint. Thus, they are excluded from the trial as irrelevant to the disputed issues.[3]

IT IS SO ORDERED this 23rd day of April 2020.

/s/ Richard G. Andrews
United States District Judge

---

[3] Plaintiffs throw in a footnote to the motion *in limine* which could be interpreted as a request to amend their complaint. (D.I. 184-18 at 46 of 47 n.5). I do not so interpret it, as the pretrial order has a section for requests to amend the pleadings, and Plaintiffs made no such request there. (D.I. 184 at 31).