UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
                                                        :
                                                        :
PHARMACY  CORPORATION  OF  AMERICA/  :    Consolidated
ASKARI  CONSOLIDATED  LITIGATION         :    C.A. No.  16-1123 RGA
                                                        :
                                                        :
-----------------------------------------------------------------x
```

**PHARMACY CORPORATION OF AMERICA'S BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR REARGUMENT OF THE COURT'S
<u>APRIL 23, 2020 ORDER (D.I. 196) PURSUANT TO D. DEL. LR 7.15</u>**

Dated: May 20, 2020

HOLLAND & KNIGHT LLP
Christopher G. Kelly (admitted *pro hac vice*)
Stosh Silivos (admitted *pro hac vice*)
31 West 52nd Street
New York, New York 11101
Telephone: (212) 513-3533

HOLLAND & KNIGHT LLP
Jeremy M. Sternberg (*admitted pro hac vice*)
10 St. James Avenue, 11th Floor
Boston Massachusetts 02116
Telephone: (617) 523-2700

MORRIS JAMES LLP
Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19899
Telephone: (302) 888-6800

*Attorneys for Pharmacy Corporation of America*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

ARGUMENT .............................................................................................................................1

I.   THE COURT CAREFULLY EXAMINED THE CLAIMS ASSERTED IN PLAINTIFFS' SECOND AMENDED COMPLAINT AND APPROPRIATELY EXCLUDED EXTRANEOUS ALLEGATIONS. .............................2

II.  PLAINTIFFS DID NOT AMEND THEIR SECOND AMENDED COMPLAINT SIMPLY BY INCLUDING LANGUAGE, OVER PCA'S OBJECTION, IN THE PROPOSED PRETRIAL ORDER. ................................................6

III. PLAINTIFFS' PERFUNCTORY, DEFICIENT, AND UNTIMELY REQUEST TO AMEND SHOULD BE DENIED. ..........................................................7

CONCLUSION .........................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bell v. Shulkin*,
   709 F. App'x 167 (4th Cir. 2017) ...................................................................................................5

*Combustion Sys. Servs., Inc. v. Schuykill Energy Res., Inc.*,
   C.A. No. 92-4228, 1993 WL 523702 (E.D. Pa. Dec. 15, 1993) ................................................7

*Cooley v. Great S. Wood Preserving*,
   138 F. App'x 149 (11th Cir. 2005) ...............................................................................................6

*Del. Display Grp. LLC v. Lenovo Grp. Ltd.*,
   C.A. No. 13-2108-RGA, 2016 WL 720977 (D. Del. Feb. 23, 2016) ........................................8

*E.I. DuPont de Nemours & Co. v. Unifrax I LLC*,
   C.A. No. 14-1250-RGA, 2017 WL 1822279 (D. Del. May 5, 2017) ........................................8

*Evans v. Attorney Gen. of Del.*,
   C.A. No. 17-1495-RGA, 2018 WL 3580292 (D. Del. July 25, 2018) ......................................1

*Farrington v. Silva*,
   No. CV 16-1206-RGA, 2018 WL 6819010 (D. Del. Dec. 28, 2018) ........................................9

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
   482 F.3d 247 (3d Cir. 2007) ..........................................................................................................7

*Foley v. Aspen Ski Lodge Ltd. P'ship*,
   208 F.3d 225 (10th Cir. 2000) ......................................................................................................6

*Hance v. BNSF Ry. Co.*,
   C.A. No. 13-2656, 2015 WL 1758449 (W.D. Tenn. Apr. 17, 2015) ........................................7

*Hopkins v. Frontino*,
   C.A. No. 11-900-RGA, 2012 WL 404961 (D. Del. Feb. 7, 2012) ...........................................1

*In re Integrated Health Servs., Inc.*,
   375 B.R. 730 (D. Del. 2007) .........................................................................................................9

*Kabbaj v. Simpson*,
   C.A. No. 12-1322-RGA, 2013 WL 867751 (D. Del. Mar. 7, 2013), *adopted by*
   2013 WL 1405948 (D. Del. Apr. 8, 2013 ..................................................................................7

*Krouse v. Am. Sterilizer Co.*,
   126 F.3d 494 (3d Cir. 1997) ..........................................................................................................5


*Pfizer Inc. v. Sandoz Inc.*,
  C.A. No. 12-654-GMS-MPT, 2013 WL 5934635 (D. Del. Nov. 4, 2013) ................................. 8

*Shahin v. Del. Fed. Credit Union*,
  C.A. No. 10-475-LPS, 2014 WL 12603505 (D. Del. May 15, 2014) ....................................... 1

*TQ Delta, LLC v. 2Wire, Inc.*,
  C.A. No. 13-1835-RGA, 2019 WL 1863269 (D. Del. 2019) ................................................... 9

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................................................ 5

Fed. R. Civ. P. 15 ..................................................................................................................... 7, 8, 9

Fed. R. Civ. P. 16 ............................................................................................................................ 8

Local Rule 7.1.5 ........................................................................................................................... 1, 6

Local Rule 15.1 ................................................................................................................................ 7

## ARGUMENT

Plaintiffs fail to meet the legal or factual elements of a Local Rule 7.1.5 motion for reargument, and for the reasons set forth below, the motion should be denied.

Pursuant to Local Rule 7.1.5, motions for reargument "shall be sparingly granted." They are "not properly grounded on a request that a court rethink a decision already made" and are "not an opportunity to accomplish repetition of arguments that were or should have been presented to the court previously." *Shahin v. Del. Fed. Credit Union*, C.A. No. 10-475-LPS, 2014 WL 12603505, at *1 (D. Del. May 15, 2014) (internal quotation marks and citations omitted). Rather, motions for reargument are granted only if the court has patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *See Hopkins v. Frontino*, C.A. No. 11-900-RGA, 2012 WL 404961, at *2 (D. Del. Feb. 7, 2012). Moreover, "[t]o succeed on a motion for reargument, the movant must show at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." *Evans v. Attorney Gen. of Del.*, C.A. No. 17-1495-RGA, 2018 WL 3580292, at *1 (D. Del. July 25, 2018).

Here, Plaintiffs have not shown that the Court patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. Contrary to Plaintiffs' suggestion that the Court excluded "facts" because it was unaware some of them were alleged in the Second Amended Complaint, the Court quite thoroughly and explicitly reviewed the Second Amended Complaint and then excluded facts (whether or not alleged) that are irrelevant to the <u>claims</u> Plaintiffs pled. There was no "clear error of law or fact," nor is there any "manifest injustice" in restricting trial to the claims Plaintiffs pled when they—and they alone—had power of the pen.

I.  **The Court Carefully Examined The Claims Asserted In Plaintiffs' Second Amended Complaint And Appropriately Excluded Extraneous Allegations.**

The crux of the current issue is "what causes of action did Plaintiffs actually assert in their six-count Second Amended Complaint?" For obvious reasons (because it is fatal to their motion), Plaintiffs dodge this question in their motion, which instead focuses on whether particular facts were alleged. The Court, on the other hand, carefully examined Plaintiffs' Second Amended Complaint—and each specific count therein—to outline the contours of the causes of action asserted and, thus, the issues relevant for trial.

As PCA argued and the Court specifically found, the body of the 128-paragraph Second Amended Complaint is filled with all sorts of allegations that are completely untethered to the actual causes of action alleged. These irrelevant and extraneous allegations range from assertions that PCA "gut[ted] the Great Neck pharmacy staff" and "stopped selling the high-profit infusible and injectable services" (D.I. 110 at ¶¶ 54-55) to accusations that PCA acted in bad faith in attempting to negotiate an early buyout with Askari (*id.* at ¶¶ 64-68). *See, e.g.,* D.I. 184-18 (PCA's *In Limine* Motion) at p. 2; D.I. 196 (Court's Memorandum Order) at p. 1.

Fortunately, however, that does not mean that PCA and the Court were left to guess what claims Plaintiffs were advancing. Plaintiffs explicitly delineated their causes of action in a series of six Counts. While Plaintiffs now largely ignore those enumerated causes of action, they were the necessary frame of reference for PCA (throughout this litigation) and the Court (in deciding the motion *in limine*) to determine the scope of issues for trial.

Count I and II, styled as a declaratory judgment and a breach of contract claim ("in the alternative"), relate to the First Call and allege that "PCA breached the Operating Agreement by using a Net Debt of $70,500,000 to calculate the purchase price" and by "fail[ing] to include share[d] services when calculating EBITDA" for the purchase price. D.I. 110 at ¶¶ 95, 98; *see*

*also id.* at ¶ 82 (alleging that the First Call was invalid because PCA "calculated the purchase price using a Net Debt that exceeds the Net Debt cap of $16,500,000.00" and "failed to include in EBITDA revenues derived from shared services").[1] As a basis for the first theory, Plaintiffs allege that any increase in Net Debt above $16,500,000 constituted a "Major Decision," requiring Plaintiffs' consent. *Id.* at ¶¶ 83-84, 89-94.

Count III and IV, also styled as a declaratory judgment and breach of contract claim ("in the alternative"), relate to the Second Call and allege that PCA breached the Operating Agreement by purchasing the wrong number of membership interests at the Second Call in light of the purported First Call breach (*id.* at ¶¶ 101-104, 106-107) and by "failing to include share[d] services when calculating EBITDA" (*id.* at ¶ 108; *see also id.* at ¶¶ 103-104).[2]

Count V is directed towards the individual defendants who were dismissed. And, Count VI is a claim for breach of the covenant of good faith and fair dealing based on the increase in the Working Capital Loan. *See, e.g.,* D.I. 110 at ¶ 126 ("Defendants acted in bad faith by increasing the Working Capital Loan . . . so that Plaintiffs' membership interests would be worthless.").

As the Court recognized and articulated in its Memorandum and Order, all of these claims can be distilled into two primary issues: (1) "were the increases in the Working Capital Loan 'Major Decisions' within the meaning of the Operating Agreement?"; and (2) "were the revenues that Specialty derived from shared services properly included in EBITDA for purposes of the First

---

[1] Count I also contained a claim that PCA purchased too many membership interests during the First Call (*id.* at ¶¶ 80-81), but Plaintiffs expressly abandoned that claim. *See* D.I. 196 at p. 2 n.1.
[2] The Second Amended Complaint does not allege that the Net Debt utilized at the Second Call was incorrect. The Plaintiffs first asserted that in the Proposed Pretrial Order (although, the basis for the assertion is unclear because the Net Debt utilized at the Second Call was below the $16,500,000 "cap" Plaintiffs claim). *See* D.I. 184 at ¶ 192. PCA objected on the ground that this was a new claim. *See* D.I. 184-18 at p. 3 ("Askari now claims that the PCA Litigants also 'breached the terms of the agreements' by . . . [*inter alia*] incorrectly calculat[ing] net debt *for the Second Call*. None of these allegations forms the basis for the claims in the Askari Litigants' Complaint.").

3

and Second Call?" *See* D.I. 196 at p. 3.  Relying on Plaintiffs <u>own</u> alleged causes of action, those are the issues that PCA has focused on throughout this litigation.

In the Proposed Pretrial Order, however, Plaintiffs indicated that they intended to litigate issues far exceeding those questions, including, for example, allegations that PCA:

- "improperly included" accounting adjustments made "for events that occurred in 2013 or 2014" in EBITDA (D.I. 184 at ¶ 60);

- "improperly included" non-operating expenses in EBITDA (*id.* at ¶ 61);

- erroneously booked supplier rebates (*id.* at ¶ 63);

- erroneously booked DIR recoupments (*id.* at ¶ 99);

- incorrectly "compute[d] the portion of the purchase price for the Second Call as it related to the CareMed purchase in accordance with Section 9.2(b)" (*id.* at ¶ 102);

- "caus[ed] Specialty to enter into Related Party Transactions" (*id*. at ¶ 143);

- "fail[ed] to timely and properly under take [sic] Shared Services" (*id*. at ¶ 145);

- "fail[ed] to implement the pharmacy within a pharmacy plan" (*id.*);

- failed "to implement[] a certain business plan that was the foundation of the transaction" (*id.* at ¶ 149);

- refused "to cause Specialty to make any tax distributions" (*id.*); and

- used an incorrect Valuation Multiplier for the First and Second Call (*id.* at ¶¶ 184, 190).

The Court properly excluded allegations related to these issues as not "relevant to the actual disputed factual and legal issues as framed by the complaint." D.I. 196 at p. 4.  Notably, Plaintiffs do not argue that the excluded issues are relevant to their causes of action as explicitly enumerated in the Second Amend Complaint's Counts and as carefully examined by the Court.

Instead, at this late hour (after the Pre-Trial Conference and approximately 45 days before trial), Plaintiffs re-cast their causes of action broadly as "claims for breach of contract relating to PCA's failure to properly apply the purchase price formula in accordance with Section 9.2(a) of

4

the [Operating Agreement]." D.I. 198 at p. 1. As explained above, that simply is not the cause of action Plaintiffs pled. And, contrary to Plaintiffs' suggestion, the problem was not lack of specificity. *See* D.I. 198 at p. 3 (arguing that "the requirement for further specificity goes beyond the pleading requirements of Rule 8(a)"). As the Court noted, Plaintiffs' Second Amended Complaint "identif[ied] the theory being asserted with some specificity." D.I. 196 at p.1. PCA had fair notice of those claims—and those claims alone.

The excluded issues, on the other hand, fall into one of two categories, neither of which is appropriate for inclusion in trial. The majority of the excluded issues do not appear in the Second Amended Complaint at all. For instance, in the Proposed Pretrial Order, Plaintiffs alleged that "PCA did not properly compute the portion of the purchase price for the Second Call as it related to the CareMed purchase in accordance with Section 9.2(b)." D.I. 184 at ¶ 102. But the Second Amended Complaint never mentions CareMed or Section 9.2(b), notwithstanding the fact that, at the time it was filed, Plaintiffs were well aware of how the CareMed acquisition affected the Second Call calculation (*see* Section III, *infra*). Indeed, Plaintiffs do not even attempt to identify where this issue, or any of the other newly purported EBITDA errors, were alleged in the Second Amended Complaint. *See* D.I. 196 at Ex. A (identifying allegations related solely to the Working Capital Loan and the Business Plan). They were not.

The remainder of the excluded issues (e.g., the purported "abandonment" of the "Business Plan") were alleged as "facts" but bore no relationship to the claims actually asserted. *Cf. Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 (3d Cir. 1997) ("Although the background sections of the complaints . . . refer briefly to AMSCO's alleged failure to accommodate Krouse's disability, the complaints specifically allege that each of the injuries for which Krouse seeks recovery . . . was based on unlawful retaliation or harassment."); *accord Bell v. Shulkin*, 709 F. App'x 167, 169 (4th

5

Cir. 2017) ("Bell's amended complaint included four separate causes of actions, none of which included a failure-to-accommodate claim. While her complaint contained background allegations that DVAMC failed to accommodate her disability, because Bell did not designate this claim as part of her four delineated causes of action, these allegations did not 'afford . . . fair notice of the nature and basis or grounds of the claim.'").

In short, the Court carefully examined Plaintiffs' own articulation of their claims and then excluded issues irrelevant to those claims. Plaintiffs have failed to meet their burden of showing that the Court made "an error not of reasoning but of apprehension," and there is no manifest injustice in holding Plaintiffs to the claims they drafted. On the contrary, if Plaintiffs were allowed to raise new claims at this late stage, PCA would be severely prejudiced. *See* Section III, *infra*.

## II. Plaintiffs Did Not Amend Their Second Amended Complaint Simply By Including Language, Over PCA's Objection, In The Proposed Pretrial Order.

Likely recognizing their inability to meet the Local Rule 7.1.5 standard, Plaintiffs argue that, notwithstanding the Court's order, they properly "asserted" and "preserved" the excluded issues simply by including them in their section of the Proposed Pretrial Order. This argument ignores settled law and is easily disposed of.

As an initial matter, the line of cases Plaintiffs cite for the proposition that new issues can be asserted through a pretrial order relies on the principle that issues can be tried through express or implied consent.[3] Here, PCA objected to Plaintiffs' inclusion of new claims and issues,

---

[3] *See, e.g., Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 153 (11th Cir. 2005) ("[A]lthough issues not raised in the pleadings may be treated as if they were properly raised when they either are 'tried by express or implied consent of the parties,' or 'are included in a pretrial order,' these exceptions are not applicable if an opposing party objects to the assertion of such a claim."); *Foley v. Aspen Ski Lodge Ltd. P'ship*, 208 F.3d 225, at *4 (10th Cir. 2000) ("In light of their objection in the pretrial order, Defendants clearly did not consent to the amendment of Foley's complaint to add a claim for declaratory relief.").

precisely because it recognized that Plaintiffs were attempting to use the Pretrial Order as a back-door method to amend their pleadings out of time.

In any case, Plaintiffs included the new issues in the Proposed Pretrial Order. *See* D.I. 184. The Court adopted that proposed order only "as modified by any discussion at the pretrial conference" (D.I. 185)—discussion in which the Court clearly explained that "this is a fairly narrow dispute . . . as framed by the complaint's claims," articulated its decision to "more or less grant [PCA's] motion," and stated its intention to issue an opinion explaining exactly what "the issues at trial are going to be." *See* Exhibit 1 (Pretrial Conference Tr. Excerpt) at 6:17 – 7:23.[4]

### III. Plaintiffs' Perfunctory, Deficient, and Untimely Request to Amend Should Be Denied.

As an apparent afterthought, Plaintiffs' brief in support of their motion for reargument includes a deficient and untimely request for leave to amend the Second Amended Complaint. Plaintiffs do not clearly state which subsection of Rule 15 they are relying on, nor do they bother to attach a proposed pleading or otherwise comply with Local Rule 15.1. Therefore, it is not entirely clear what specific claims Plaintiffs seek to add to their complaint.[5] The request can be denied on that basis alone. *See, e.g, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[A] failure to submit a draft amended complaint is fatal to a request for leave to amend."); *Kabbaj v. Simpson*, C.A. No. 12-1322-RGA, 2013 WL 867751, at *7 (D. Del. Mar. 7, 2013) (explaining that Local Rule 15.1 "is not a mere technicality"), *adopted*

---

[4] *See Hance v. BNSF Ry. Co.*, C.A. No. 13-2656, 2015 WL 1758449, at *1 (W.D. Tenn. Apr. 17, 2015) ("[The] rule that the pretrial order supersedes pleadings includes the words 'final pretrial order,' not 'proposed pretrial order'"); *Combustion Sys. Servs., Inc. v. Schuykill Energy Res., Inc.*, C.A. No. 92-4228, 1993 WL 523702, at *2 (E.D. Pa. Dec. 15, 1993) ("Plaintiff cannot amend its Amended Complaint by adding damage claims to the Proposed Final Pretrial Order.").

[5] Plaintiffs state that they want to include each of the "Excluded Facts" (defined as D.I. 184 at ¶¶ 59-64, 73-78), but the Court excluded those factual issues not because they were not stated in the Second Amended Complaint but because they are not relevant to the causes of action the Second Amended Complaint delineated. Thus, for an amendment to have any effect, it would have to add or amend claims.

7

*by* 2013 WL 1405948 (D. Del. Apr. 8, 2013). In any event, Plaintiffs have not met (and cannot meet) the governing standards.

First, it is well settled in this District that, "if a motion [to amend] is untimely under the scheduling order, the moving part must first show good cause [pursuant to Rule 16(b)] before seeking amendment under Rule 15." See *Del. Display Grp. LLC v. Lenovo Grp. Ltd.*, C.A. No. 13-2108-RGA, 2016 WL 720977, at *8 n.14 (D. Del. Feb. 23, 2016); *see also E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, C.A. No. 14-1250-RGA, 2017 WL 1822279, at *3 (D. Del. May 5, 2017). To show good cause, the movant must "demonstrate that, despite diligence, the amendment could not have been reasonably sought in a timely manner." *Pfizer Inc. v. Sandoz Inc.*, C.A. No. 12-654-GMS-MPT, 2013 WL 5934635, at *3 (D. Del. Nov. 4, 2013).

Here, Plaintiffs cannot show good cause because, contrary to their unsupported assertions, they knew about the issues they now seek to litigate <u>before</u> February 19, 2019, when they filed their Second Amended Complaint. For example, Plaintiffs state erroneously that "after filing their pleading" they "came to discover" that there was "a $1.8 million improper decrease in EBITDA" and "a reduction in the purchase price for losses associated with an acquired company (CareMed)." D.I. 198 at p. 8. Yet, both the $1.8 million adjustment to EBITDA (which was due to certain PBM recoupments) and the effect of the CareMed acquisition on the purchase price were clearly disclosed in PCA's January 29, 2019 letter that Plaintiffs reference in their Second Amended Complaint. *See* Exhibit 2 at p. 1 & Schedule II, IV, & V. Indeed, Plaintiffs expressly mentioned the $1.8 million DIR adjustment in their Second Amended Complaint but did not allege that it was in any way improper. *See* D.I. 110 at ¶ 78.

Second, Plaintiffs cannot satisfy the Rule 15 standard itself because, among other things, PCA would be unduly prejudiced by the amendment that Plaintiffs appear to contemplate. *See*

8

*Farrington v. Silva*, No. CV 16-1206-RGA, 2018 WL 6819010, at *4 (D. Del. Dec. 28, 2018) (explaining that "undue delay, bad faith, dilatory motive, prejudice, [and] futility" can all "justify a denial of leave to amend").[6] As explained above, this is not a case where a party seeks to amend its pleading to introduce facts related to a pre-existing claim. Nor is this a case where a party seeks to amend its pleading to reflect issues that were tried by the express or implied consent of the parties. *See In re Integrated Health Servs., Inc.*, 375 B.R. 730, 735 (D. Del. 2007) ("Motions to amend under Rule 15(b) . . . are made 'when issues not raised by the pleadings are tried by express or implied consent of the parties.'"). Instead, Plaintiffs seek to add new claims, after the close of discovery, the submission of expert reports, the adjudication of the parties' summary judgment and *in limine* motions, and the adoption of a final pretrial order. That is "inherently prejudicial." *TQ Delta, LLC v. 2Wire, Inc.*, C.A. No. 13-1835-RGA, 2019 WL 1863269, at *3 (D. Del. 2019).

The addition of these claims—which appear to scrutinize, *inter alia*, several years' worth of Specialty's accounting practices and countless business decisions from 2013 to 2018, none of which have been a focus of this litigation—would require PCA to conduct additional discovery, undertake further investigation and research, expand the scope of its expert's assignment/report (or hire an additional expert),[7] and transform its trial strategy to defend itself, and all that at a time when the Pretrial Order has been entered and trial exhibits have been exchanged.

Moreover, given that the dispositive motion deadline has long since passed, an amendment would deprive PCA the opportunity to dispose of flawed claims through motion practice, and would thus require it to spend greater time, resources, and money defeating those claims at trial.[8]

---

[6] For the same reasons stated above, there is also undue delay.

[7] PCA had an expert opine solely on what it understood to be at issue—the impact of the increased Net Debt, and the forward-buy strategy it funded, on the purchase price. *See* 184-17 at pp. 5–26.

[8] Plaintiffs wrongly suggest that the new claims were "the subject of . . . summary judgment briefing." D.I. 198 at p. 7. Plaintiffs' summary judgment motion concerned what it characterized

9

**CONCLUSION**

For the foregoing reasons, Defendant Pharmacy Corporation of America respectfully requests that the Court deny Plaintiffs' Motion for Reargument.

Dated: May 20, 2020

Respectfully submitted,

*/s/ Brett D. Fallon*
Brett D. Fallon (DE Bar No. 2480)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19899-2306
(302) 888-6800

Jeremy M. Sternberg (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
10 St. James Avenue, 11th Floor
Boston Massachusetts 02116
(617) 523-2700

Christopher G. Kelly (*admitted pro hac vice*)
Stosh M. Silivos (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
(212) 513-3533

*Attorneys for Pharmacy Corporation of America*

---

as "[t]he central question in the case"—"whether the PCA Litigants had the right to amend the Loan Agreement, and thereby increase Specialty's Net Debt, without the consent of the Onco360 Litigants." D.I. 154 at p. 13 (emphasis added). PCA did not make a summary judgment motion. The only time any of these issues were raised was by Plaintiffs in opposition to the Individual Defendants motion for summary judgment, in response to which Defendants pointed out that the issues had "nothing whatsoever to do with . . . any claim in this litigation." D.I. 164 at p. 1 & n.1.